**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ROBERT DANIEL PETERS, JR., *

Petitioner, *

v. * Civil Action No. SAG-23-237

WARDEN CARTER, *

Respondent. *

***

**MEMORANDUM OPINION**

Robert Daniel Peters, Jr., a former federal inmate proceeding without an attorney, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. *See* ECF No. 1. In the petition, Petitioner seeks the restoration of certain credits and an award of one year's early release that were withheld after a disciplinary finding while Petitioner was assigned to a residential reentry center ("RRC"). ECF Nos. 1, 9-1. Respondent, the warden of Federal Correctional Institution, Cumberland ("FCI-Cumberland"), filed a motion to dismiss the petition, or in the alternative for summary judgment. ECF No. 9. This Court notified Petitioner that a dispositive motion had been filed in this matter; but he did not file an opposition. ECF No. 10. Having reviewed the petition, motion, and related filings, the Court finds that no hearing is necessary. Rules 1(b), 8, *Rules Governing Section 2254 Cases in the United States District Courts*; D. Md. Local R. 105.6. (D. Md. 2023). For the reasons set forth below, the Court will dismiss the petition.

**BACKGROUND**

On December 2, 2019, The United States District Court for the Northern District of Ohio sentenced Petitioner to 60 months incarceration. Case No. 1:19-cr-00070-JRA, for conspiracy to pass or utter counterfeit obligations or sanctions. ECF No. 9-2 at 6. He was committed to the

Bureau of Prisons ("BOP") on March 2, 2020. *Id*. BOP designated Petitioner to FCI-Cumberland on the same date. *Id*. at 2–3.

On December 15, 2021, BOP transferred Petitioner from FCI-Cumberland to Dismas Charities Atlanta ("Dismas"), an RRC and halfway house in Atlanta, Georgia. ECF Nos. 9-1 at 2; 9-2 at 2–3. Petitioner received the transfer as part of the BOP's Residential Drug Abuse Program ("RDAP"), in which he was a participant. ECF No. 9-1 at 1. While at Dismas, Petitioner obtained employment at a company located in Atlanta and consequently had permission to sign in and out of Dismas in order to travel to his workplace. ECF Nos. 1 at 2; 9-1 at 2.

On January 10, 2022, RRC staff discovered that Petitioner had an unauthorized cellphone. ECF No. 9-3 at 3, 8. Staff searched the cellphone and learned that Petitioner had on two occasions left Dismas indicating he was traveling to his workplace. Instead, at the end of Petitioner's scheduled shifts, Petitioner used an app on the phone to arrange a rideshare to pick him up at an address other than his workplace. *Id*. at 3–4, 8. The incidents occurred on January 8, 2022, and January 10, 2022, and on both occasions, the addresses from which Petitioner was picked up were a short distance from Petitioner's anticipated post-incarceration release address—his sister's house in Stonecrest, Georgia. *Id*. Petitioner did not have permission to be anywhere but his workplace in Atlanta on both dates. *Id*.

As a consequence of Petitioner's alleged presence at unauthorized locations, BOP removed Petitioner from Dismas and remanded him to the United States Penitentiary, Atlanta ("USP-Atlanta"). ECF No. 9-3 at 4. On January 13, 2022, the Chairman of Dismas's Center Disciplinary Committee ("CDC") conducted a CDC hearing concerning the incidents, without the presence of Petitioner, who was at USP-Atlanta. *Id*. at 4, 18–20. At the time, COVID-19 restrictions prevented RRC staff from visiting USP-Atlanta. *Id*. at 4. The CDC found Petitioner

had violated the prohibition against escape from a non-secure confinement, but with voluntary return to BOP custody within four hours (code 200). ECF No. 9-3 at 4, 18–20.

The Disciplinary Hearing Officer ("DHO") of the CDC reviewed the matter. ECF No. 9-3 at 4. The DHO's report noted that the CDC hearing had been held in absentia, which meant Petitioner was not afforded his rights. ECF No. 9-3 at 17. The DHO observed that Petitioner would "require an in-person hearing prior to appealing." *Id.* Still, based on the cumulative evidence presented, the DHO supported the CDC's determination of guilt for escape (code 200) and entered a sanction, which included disallowing twenty-seven days' Good Conduct Time ("GCT") and removing Petitioner from the RDAP and his RRC. *Id.*

In order for Petitioner to be afforded his rights, the disciplinary hearing process began anew not long after the initial process. On March 2, 2022, Petitioner attended a re-investigation of the matter at USP-Atlanta. ECF No. 9-3 at 4, 26–28. On that date, Respondent presented Petitioner with a copy of the original incident report, which Respondent concedes was not provided to Petitioner within the normal timeframe—a lapse Respondent attributes to Petitioner's remand. ECF Nos. 9-1 at 4; 9-3 at 5. Petitioner's Unit Disciplinary Committee hearing took place on March 15, 2022. ECF No. 9-3 at 5, 33. The matter was again referred to a DHO for further review and for the imposition of sanctions if warranted. *Id*. Petitioner did not request any witnesses or a staff representative. *Id*. at 5, 38.

The DHO conducted a hearing on March 17, 2022. ECF No. 9-3 at 5, 40–43. Petitioner did not deny that he had traveled to his sister's house on the dates in question. *Id*. at 40. Instead, he explained that he traveled to her house to work and argued that working from there was necessary because he could not complete his job duties without the use of a laptop, which was prohibited at Dismas. *Id*. Based on Petitioner's statement and the totality of the evidence, the DHO found that Petitioner had committed escape (code 200) and sanctioned him. The sanctions

included the loss of twenty-seven days' GCT and the loss of privileges. *Id*. at 43. Petitioner did not receive a copy of that DHO report for more than a year—on April 13, 2023. *Id*. at 6.

The parties agree that by November 27, 2022, Petitioner had exhausted his administrative remedies in relation to the incident report. ECF Nos. 1 at 2–3; 1-1 at 6; *see* ECF no. 9-1. Petitioner received no relief through the process. *Id*.

On January 27, 2023, Petitioner filed his § 2241 petition. ECF No. 1. In it, Petitioner raises three claims: that holding the CDC hearing in absentia violated his rights and prejudiced the outcome because Petitioner would have called his Job Coordinator as an exonerating witness; that BOP violated Petitioner's due process rights when it failed to provide Petitioner with the March 17, 2022 DHO report; and that the facts presented and conclusions made in the originating incident report were rendered incompetently, without sufficient consideration given to Petitioner's explanation of his presence at his sister's. *Id*. at 6–7.

Aside from the procedural anomalies of the first hearing outside of Petitioner's presence and the delayed DHO report, Petitioner's claims turn on his assertion that he had permission to travel up to 100 miles for work and that he was permitted to "work remotely from home." ECF Nos. 1 at 2, 7; 1-1 at 1–5. Therefore, according to Petitioner, he cannot be guilty of escape when he traveled to his sister's house—his approved release location—to work remotely. ECF No. 1 at 2, 6–7. For relief, Petitioner requests: (1) the restoration of his twenty-seven days of GCT; (2) a determination that he constructively finished RDAP and should be awarded the usual early release credit of one year; and (3) expungement of the originating incident report concerning his alleged infractions from his prison record. *Id*. at 8.

On May 10, 2023, Respondent filed a motion to dismiss, or in the alternative for summary judgment. ECF No. 9. Respondent contends that Petitioner received all the process to which he was entitled, and that the DHO applied the appropriate standard ("some evidence") in reaching its

conclusion that Petitioner was guilty of escape (code 200). ECF No. 9-1 at 1, 4–9. Respondent further argues that the early release credit from RDAP completion is not an entitlement but a discretionary award, even when a participant successfully completes the full program without incident, which Petitioner did not. *Id*. at 1–2, 9–12. Because it is a discretionary award, the matter is not reviewable by the Court as a claim under the Administrative Procedures Act per 18 U.S.C. § 3625. *Id*. at 9–12. In the alternative, Respondent asserts Petitioner has failed to state a claim in relation to his removal from the RDAP because Petitioner does not have a liberty interest in early conditional release where his valid sentence has not yet expired. *Id*. at 12–13.

On May 11, 2023, the Clerk of the Court sent Petitioner a notice informing him that a dispositive motion had been filed in this matter. ECF No. 10; *see Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). The notice afforded Petitioner the usual twenty-eight days from the date of the notice to respond to the motion or to request more time to respond. *Id*. at 1. The notice also informed Petitioner: "If you file no written response, the Court will resolve the case based on the materials submitted by respondent(s)." *Id*. Petitioner had through Thursday, June 8, 2023, to respond or to file a request for more time. No response has been received.[1]

On July 19, 2023, BOP released Petitioner from confinement and he began his three-year term of supervision. ECF Nos. 9-1 at 2; 9-2 at 6; *see* https://www.bop.gov/inmateloc (indicating Petitioner's release on July 19, 2023 last visited on Jan. 9, 2024).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Such motions "address[ ] whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose"

[1] Respondent's motion to dismiss, or in the alternative for summary judgment, is deemed unopposed; however, a district court "has an obligation to review the motion[ ] to ensure that dismissal is proper." *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014).

of the plaintiff's claim. *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). "[I]ssues of subject matter jurisdiction are 'non-waivable'." *Ward v. Walker*, 725 F. Supp. 2d 506, 512 (D. Md. 2010). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

**DISCUSSION**

**A. The Custody Requirement, The Proper Respondent, and A Court's Jurisdiction**

"Federal courts may only take jurisdiction over a petition for a writ of habeas corpus when the prisoner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Bernard v. Garraghty*, 934 F.2d 52, 53–54 (4th Cir. 1991) (quoting 28 U.S.C. §§ 2241(c)(3), 2254(a)). Petitioner was incarcerated at the time he filed his § 2241 petition, which satisfies the "in custody" requirement of the statute. *Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998) ("Spencer was incarcerated . . . at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires."). Now, however, Petitioner is serving his term of supervised release. While the execution of a petitioner's supervised release means the petitioner is still in custody for purposes of a habeas petition, *Maleng v. Cook*, 490 U.S. 488 (1989); *U.S. v. Pregent*, 190 F.3d 279, 283 (1999), whether the location of that newly begun supervised release (or a prison transfer, for that matter) affects a pending § 2241 petition has not been resolved with as much consistency and clarity. A petitioner's location impacts the identification of the proper respondent, as well as the jurisdiction of a court to decide the matter.

In plain terms, the immediate custodian of a petitioner is generally the party who must be named as respondent in a § 2241 petition. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–42 (2004). The "'immediate custodian rule' is the default, and is 'general[ly] applicab[le] . . . to habeas petitions challenging physical custody.'" *United States v. Poole*, 531 F.3d 263, 271 (4th Cir. 2008) (quoting

*Padilla*, 542 U.S. at 436). A court "properly exercises jurisdiction over a habeas petition whenever it has jurisdiction over the petitioner's custodian." *Poole*, 531 F.3d at 271.

The Supreme Court and the Fourth Circuit, however, have further explained the general rule. Relevant to this matter, the Supreme Court has opined that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Padilla*, 542 U.S. at 441. The Fourth Circuit applied this principle in *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019), which was an appeal of a § 2241 habeas decision concerning due process in a prison disciplinary determination. In that matter, the Fourth Circuit found that:

> When Petitioner filed his habeas petition, he was housed at the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg"), which lies within the jurisdiction of the United States District Court for the Eastern District of Virginia. The Bureau of Prisons subsequently transferred Petitioner to the low-security Federal Correctional Institution Seagoville, in Texas, and then to Federal Correctional Institution Jesup, in Georgia, where Petitioner remains housed. [ ] When the "Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court [where the petitioner filed a petition] retains jurisdiction." *[Padilla*, 542 U.S. at 441].

*Lennear*, 937 F.3d at 263 n.1 (some citations omitted).

District courts in this circuit generally have concluded from *Lennear* and *Padilla* that once jurisdiction over a § 2241 petition is obtained, most petitions properly remain before that district court even upon transfer of the petitioner. *See Bradford v. Bell*, No. CV-TDC-20-0525, 2023 WL 349516, at *2 (D. Md. Jan. 20, 2023) ("In a § 2241 action, jurisdiction is determined at the time the action is filed."); *Cherfils v. Dunbar*, No. 8:22-CV-03241-JD-JDA, 2023 WL 6164353, at *4 n.4 (D.S.C. July 27, 2023) (finding that "[i]n light of *Lennear*, . . . because Petitioner initially filed his action in this District, where he was confined at the time, and named his immediate

custodian [ ] as the Respondent" the court had jurisdiction), *report and recommendation adopted*, No. 8:22-CV-3241-JD-JDA, 2023 WL 6161994 (D.S.C. Sept. 21, 2023); *Feather-Gorbey v. Warden, Beckley FCI*, No. 5:22-CV-00138, 2022 WL 2376240, at *1 (S.D.W. Va. June 30, 2022) ("Transfer does not prevent the Court's adjudication of these claims so long as the Court had jurisdiction over Petitioner's immediate custodian at the time of filing."), *appeal dismissed sub nom. Owlfeather-Gorbey v. Warden, FCI Beckley*, No. 22-6879, 2023 WL 5842303 (4th Cir. Sept. 11, 2023); *Richmond v. Barnes*, No. 6:20-CV-00152-DCC, 2021 WL 1124874, at *1 n.1 (D.S.C. Mar. 24, 2021) ("[T]his action was properly brought in this Court because Petitioner was housed in South Carolina at the time he filed the Petition."); *Hunt v. Rickard*, No. CV 1:18-01371, 2021 WL 932035, at *10 (S.D.W. Va. Mar. 11, 2021) ("This court retains the jurisdiction that attached when petitioner filed this case as a prisoner incarcerated within this district."). Certain district courts in other circuits have applied that jurisdictional principle similarly, some citing *Lennear* in support.[2] District court decisions to the contrary within the Fourth Circuit generally predate *Lennear*, though decisions in other circuits that read *Padilla* more narrowly demonstrate there may not be full accord among the circuits.[3] Nevertheless, *Lennear* is binding in this Circuit, and the

[2] *See, for example*, *Yancey v. Warden, FMC Devens*, No. 22-CV-11790-DLC, 2023 WL 4409852, at *2 (D. Mass. July 7, 2023) (explaining that the First Circuit has not decided yet whether a petitioner's transfer affects jurisdiction, but noting "nine other circuit courts have, and all have concluded . . . that a prisoner's transfer after a district court's jurisdiction attaches does not defeat jurisdiction over a habeas corpus petitioner as long as there remains in the district a respondent who can effectuate any court order"); *Jones v. FCI Berlin*, No. 21-CV-767-SE, 2023 WL 2186459, at *1 (D.N.H. Feb. 22, 2023) (noting that "several circuit and district courts had previously considered the issue and concluded that a prisoner's transfer after a district court's jurisdiction attaches does not defeat jurisdiction over a habeas corpus petition); *Fox v. Warden, FCI Berlin*, No. 21-CV-158-SE, 2022 WL 1085311, at *3 (D.N.H. Apr. 11, 2022) (retaining jurisdiction over the petition and noting "several [ ] Circuit Courts of Appeal have concluded that a prisoner's transfer after a district court's jurisdiction attaches does not defeat jurisdiction over a habeas corpus petition").

[3] For decisions within the Fourth Circuit that contradict but predate *Lennear*, *see, for example*, *Major v. Ramirez*, No. 8:17-CV-2355-MGL-JDA, 2018 WL 2470747, at *2 (D.S.C. May 9, 2018) (finding the petitioner's transfer to an out-of-state prison defeated jurisdiction), *report and recommendation adopted*, No. CV 8:17-2355-MGL, 2018 WL 2462002 (D.S.C. May 31, 2018); *Plaskett v. Cruz*, 282 F. Supp. 3d 912, 914 (D.S.C. 2017) (finding the court lacked jurisdiction over a pending § 2241 and transferring it) ("Although Petitioner was incarcerated in this district when he filed his petition, he is now under supervised release in the Virgin Islands."); *Smith v. Owen*, No. CA 0:09-2310-JFA-PJG, 2011 WL 743094, at *2 (D.S.C. Jan. 21, 2011) ("Since the filing of the instant Petition, Smith has been transferred [ ]. Even if this court were to grant the relief Smith seeks, Warden Owen has no ability to fulfill an order of this court

Court determines that jurisdiction attached here. Thus, the location of Petitioner's current supervised release, which is not indicated in the record but was anticipated to be Atlanta, Georgia, does not affect the Court's ability to decide this matter.

**B. Mootness**

"[S]eparate and distinct from the jurisdictional issue" examined above, Petitioner's release from prison raises a second issue: "[t]he question of mootness." *Leonard v. Hammond*, 804 F.2d 838, 842 (4th Cir. 1986). "[T]hroughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer*, 523 U.S. at 7 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). A petition under § 2241 is not rendered moot simply because a petitioner is released from incarceration. "A case becomes moot only when it is *impossible* for a court to grant *any* effectual relief whatever to the prevailing party." *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018) (alterations original) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). If the matter is moot, "the mootness, however it may have come about," would "deprive[ ]" this Court of its "power to act." *Spencer*, 523 U.S. at 18. "[Q]uestions of subject matter jurisdiction . . . may (or, more precisely, must) be raised *sua sponte* by the court." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004).

. . . since Smith is no longer in his custody."), *report and recommendation adopted,* No. CA 0:09-2310-JFA-PJG, 2011 WL 743212 (D.S.C. Feb. 24, 2011).

For examples outside the Fourth Circuit, *see Lindsay v. Warden*, No. 19-CV-1101-PB, 2021 WL 1565582, at *2 (D.N.H. Feb. 26, 2021) (observing that "every district court in the First Circuit that has confronted similar circumstances—a transfer of a petitioner to a facility outside of the court's territorial jurisdiction during the pendency of habeas proceedings—has held that it should not hear the merits of the transferred petitioner's claims"), *report and recommendation adopted sub nom. Lindsay v. Fed. Corr. Inst.*, No. 19-CV-1101-PB, 2021 WL 1565287 (D.N.H. Apr. 21, 2021); *Redding v. Thompson*, No. 17-CV-2740 (JRT/TNL), 2018 WL 850147, at *3–5 (D. Minn. Jan. 23, 2018) (providing a full discussion of jurisdiction questions not fully resolved under Supreme Court precedent, including *Rumsfeld v. Padilla*, 542 U.S. 426 (2004)), *report and recommendation adopted,* No. CV 17-2740 (JRT/TNL), 2018 WL 847764 (D. Minn. Feb. 13, 2018); *Mitchell v. Bledsoe*, No. 06-624-DRH, 2009 WL 3156689, at *2 (S.D. Ill. Sept. 28, 2009) (finding that because "Petitioner has been transferred[,] no appropriate respondent now remains in the district").

Petitioner's sentence is unitary, meaning the "custodial and supervised release terms" are "components of one unified sentence." *Ketter*, 908 F.3d at 65. If Petitioner challenged the validity of his conviction or sentence (generally under 28 U.S.C. § 2255, though not always), the unitary nature of his sentence would allow Petitioner to attack his term of incarceration even though that term had expired and he was serving supervised release. *Id.* at 65–66. As the Fourth Circuit explained:

> Because of the reciprocal relationship between a prison sentence and a term of supervised release, even when a prison term has ceased, a defendant serving a term of supervised release has a "legally cognizable interest in the outcome" of a challenge to his sentence. [ ]. Although the underlying prison sentence has been served, a case is not moot when an associated term of supervised release is ongoing, because on remand a district court *could* grant relief to the prevailing party in the form of a shorter period of supervised release.

*Id.* (internal citation omitted).

But Petitioner is attacking the execution of his sentence, not its validity. In that instance, the Court considers whether, if Petitioner prevailed on his petition, the Court could grant any effectual relief to him. *Ketter*, 908 F.3d at 65. For the reasons explained below, the Court concludes that it could not.

Petitioner has requested, in part, the restoration of twenty-seven days of GCT credits and the award of one year of early release in relation to his term of incarceration. ECF No. 1 at 8. To the extent that Petitioner, at the time he filed his petition, sought to have the date of his release moved forward, the petition became moot on July 19, 2023, when Petitioner was released from prison. Petitioner sought, in part, relief that would impact the length of his term of incarceration, yet as of July 19, 2023, that "remedy [would] have no such effect" because Petitioner already has been released.[4] *Francis v. Maloney*, 798 F.3d 33, 37 (1st Cir. 2015) (evaluating the petitioner's

[4] The earliest this matter could have been considered ripe for decision was June 9, 2023, which was the first day following the expiration of Petitioner's window to oppose Respondent's motion or to ask for more time to respond.

post-release habeas claim as: 1) "a retroactive challenge to the execution of an incarcerative sentence," and 2) as "a protest to the execution of [the] supervised release term"; finding relief unavailable and affirming the district court's dismissal of the petition); *see Jones v. Bolster*, 850 F. App'x 839 (4th Cir. 2021) (unpublished) (finding a petitioner's request for immediate release and restoration of good time credits moot after his release from incarceration; concluding that "any collateral consequence of the prison disciplinary conviction remaining on [the petitioner's] record is too speculative to satisfy the case-or-controversy requirement").

The conclusion that these particular requests for relief became moot upon Petitioner's release is further supported by the fact that credits shortening a prisoner's term of incarceration do not carry forward to a second term of confinement. When a prisoner is released on parole or on supervised release, "the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release." 28 C.F.R. § 2.35(b); *see Boniface v. Carlson*, 881 F.2d 669, 671 (9th Cir. 1989); *Bailey v. Southerland*, 821 F.2d 277, 278–79 (5th Cir. 1987); *Wilson v. Andrews*, No. 1:20-CV-470 (RDA/MSN), 2020 WL 5891457 (E.D. Va. Oct. 5, 2020); *Turnage v. U.S. Parole Comm'n*, No. CV-ELH-11-3373, 2014 WL 1340071, at *4–5 (D. Md. Apr. 2, 2014), *aff'd*, 583 F. App'x 245 (4th Cir. 2014).

If the Court evaluates the petition not as a request to amend the end date of Petitioner's incarceration, but as a request to backdate the start of his supervised release, *Francis*, 798 F.3d at 38, relief still could not be granted by this Court. "The Supreme Court has held that when a defendant's term of incarceration is partially vacated, the overserved time does not shorten his

Because Petitioner did neither, his case was ripe following closure of that window. Petitioner was released 41 days later, on July 19, 2023. Had Petitioner either opposed Respondent's motion, or requested further time to respond, the timeline would have been compressed even further. Thus, the window for meaningful relief was narrow from the outset, even if Petitioner's claims had been determined meritorious. Petitioner did not seek to expedite this matter.

term of supervision." *United States v. Jackson*, 952 F.3d 492, 498 (4th Cir. 2020) (citing *United States v. Johnson*, 529 U.S. 53, 54 (2000)). Thus, assuming arguendo the petition here was meritorious, this Court still could not alter Petitioner's supervised release. "Even if a defendant's term of imprisonment should have ended sooner than it did, his term of supervised release does not begin until he is released from custody." *Jackson*, 952 F.3d at 498. The Supreme Court described how a petitioner might be afforded this type of relief:

> There can be no doubt that equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term. The statutory structure provides a means to address these concerns in large part. **The trial court, as it sees fit, may modify an individual's conditions of supervised release. [18 U.S.C.] § 3583(e)(2). Furthermore, the court may terminate an individual's supervised release obligations "at any time after the expiration of one year** . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." [18 U.S.C.] § 3583(e)(1).

*Johnson*, 529 U.S. at 60 (emphasis added).

Some circuits have held that a district court may issue a declaratory judgment under these circumstances if it finds a § 2241 petition meritorious. *See Rhodes v. Judiscak*, 676 F.3d 931, 934 (10th Cir. 2012) (discussing the circuit split on issuance of a declaratory judgment in a § 2241 action when a petitioner has overserved a sentence but cannot be granted other relief). Other circuits have reasoned: "[t]he prospect that [the court's] resolution" of a § 2241 petition "will influence the [trial] court to exercise its discretion to terminate [the] supervised release under § 3583(e)(1) is so speculative that any decision on the merits would be merely advisory . . ." *Rhodes*, 676 F.3d at 934–35 (quoting *United States v. Bundy*, 391 F. App'x 886, 887 (D.C. Cir. 2010). *See Burkey v. Marberry*, 556 F.3d 142, 149 (3d Cir. 2009); *see also United States v. Blackburn*, 461 F.3d 259, 262 (2d Cir. 2006); *Spencer*, 523 U.S. at 14–15. In this matter, Petitioner has not yet served a year of supervised release, meaning he is not eligible for termination under § 3583(e)(1), even if the trial court in the Northern District of Ohio was inclined to terminate.

Further, termination of supervised release involves consideration of many factors, of which an overservice of a sentence would be only one. For these reasons, the Court finds that a declaratory judgment is too speculative to afford relief in this matter.

Reading the foregoing together, Petitioner's requested relief in the form of restored GCT credits and an award of one year of early release is moot. The unitary nature of Petitioner's sentence does not save his claims because he is not challenging the sentence itself, but instead the outcome of a disciplinary hearing that affected how the sentence was executed. The restoration of credits or award of early release would have no effect on his time of incarceration at this point, the credits cannot be banked, and supervised release can only be shortened to offset an overserved term of incarceration at the discretion of the trial court, not through a § 2241 petition.

As a third form of relief, Petitioner requested that the incident report related to this disciplinary case be expunged from his prison record. ECF No. 1 at 8. Petitioner did not allege that he would be subject to future collateral consequences because of the incident report, though the Court recognizes that Petitioner commenced this matter before he was released from incarceration. Even if Petitioner had alleged future collateral consequences related to the incident report, such allegations would be too speculative to meet the 'case or controversy' requirement. *Bailey*, 821 F.2d at 279 (finding "the mere possibility of future consequences [from an incident report] is too speculative to give rise to a case or controversy"); *Vandenberg v. Rodgers*, 801 F.2d 377, 378 (10th Cir. 1986) ([T]he possibility that [the petitioner] might be subjected to future adverse consequences because of his incident report is too speculative."); *see Jones*, 850 F. App'x at 839 (concluding that "any collateral consequence of the prison disciplinary conviction remaining on [the petitioner's] record is too speculative to satisfy the case-or-controversy requirement"). A petition must assert "a *redressable* collateral consequence." *Rhodes*, 676 F.3d at 933 (emphasis original). A collateral consequence that is overly speculative cannot be redressed.

### C. Respondent's Arguments

Because the petition will be dismissed on mootness grounds, the Court does not decide Respondent's arguments.[5]

## CONCLUSION

For the reasons set forth above, the Court raises the issue of mootness *sua sponte* and the petition, ECF No. 1, will be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. Respondent's motion to dismiss, or in the alternative for summary judgment, ECF No. 9, will be DENIED as moot. A separate order follows.

January 29, 2024
Date

/s/
Stephanie A. Gallagher
United States District Judge

[5] This Court notes, however, that Litigants have a continuing obligation to keep a current address on file with the Clerk of the Court during the pendency of their actions. *See* Local Rule 102.1.b.iii. To date, Petitioner has failed to notify the court of his new address since being released from incarceration and commencing his term of supervised release. That omission constitutes separate grounds to enter an order dismissing the action.